UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANGELICA DOLLOFF,<br><br>Defendant. | 3:18-CR-30085-RAL<br><br><br>OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE |

On August 17, 2021, Angelica Dolloff filed a motion for relief under the First Step Act (FSA) requesting that her sentence be reduced time served and supervised release with home confinement. Doc. 84; Doc. 86 at 1. Dolloff had filed a motion for relief under the FSA before in August 2020, which this Court denied. Docs. 73, 83. As with Dolloff's first motion for relief, the Federal Public Defender Office for the Districts of North and South Dakota (FPD) submitted a supplement in support of the pending motion, and the Government responded in opposition. Doc. 83 at 1; Docs. 86, 87.

## I.    Background

Dolloff was indicted on one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); and one count of possession of ammunition by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2), and 924(d).[1]

---

[1] Many of the facts on Dolloff's medical history and the procedural history in this case are taken from this Court's opinion and order, Doc. 83, on Dolloff's first motion for compassionate release.

1

Doc. 83 at 1. On February 20, 2019, she appeared before this Court and entered a guilty plea to a count of conspiracy to distribute a controlled substance. Doc. 83 at 1. The sentencing guideline range for Dolloff was 57 months to 71 months custody. Doc. 83 at 2. On July 8, 2019, this Court sentenced Dolloff to 60 months of incarceration followed by three years of supervised release, and the remaining count was dismissed. Doc. 83 at 1.

Dolloff is serving her sentence at Carswell Federal Medical Center (Carswell FMC) in Fort Worth, Texas. Doc. 83 at 1. Dolloff suffers from stage 5 chronic kidney disease and is dependent on dialysis treatments three times a week. Doc. 83 at 6–7. In early 2020, she experienced numbness and discoloration in her arm and hand on the same side of her body as her arteriovenous ("AV") fistula, the access point for hemodialysis. Doc. 83 at 7–8. Dolloff underwent an angioplasty in June 2020 to reopen her AV fistula. Doc. 83 at 8.

On August 24, 2020, after serving approximately 20% of her sentence, she filed a pro se motion for compassionate release, citing her health conditions and the global COVID-19 pandemic. Doc. 73; Doc. 83 at 1. In addition to stage 5 chronic kidney disease, Dolloff suffered from hypertension, secondary hyperparathyroidism, and obesity at the time of the motion; and she continues to suffer from these conditions. Doc. 83 at 3; Doc. 86 at 1.

### A. First Motion for Compassionate Release

This Court found the seriousness of Dolloff's conviction, involving distribution of a "substantial amount of methamphetamine over several years," weighed against her motion for compassionate release. Doc. 83 at 9–10. Dolloff distributed between 500 grams and 1.5 kilogram of methamphetamine between 2013 and 2018, used methamphetamine, and began selling it to make money after her divorce. Doc. 83 at 2. Dolloff also repeatedly violated her pretrial release conditions by using methamphetamine. Doc. 83 at 2, 10. On the other hand, this Court found that

2

Dolloff's limited criminal history and health issues weighed in favor of her release. Doc. 83 at 9–10. This Court further noted that individuals with chronic kidney disease and obesity, like Dolloff, have a higher risk of severe illness if they contract COVID-19. Doc. 83 at 3.

After concluding Dolloff's motion presented a close question, this Court ultimately denied it. Doc. 83 at 1. Although Dolloff's chronic kidney disease may be a terminal illness, this Court determined her disease did not warrant compassionate release under U.S.S.G. § 1B1.13 comment note 1(A)(i) because the Court was aware of it when it sentenced her. Doc. 83 at 6. Further, although the COVID-19 pandemic posed health risks to Dolloff that did not exist at the time of sentencing, this Court found that "the extent to which Carswell FMC . . . ha[d] the virus under control . . . militates against release." Doc. 83 at 8–9. Lastly, this Court determined that Dolloff's use of methamphetamine on pretrial release, and that she had only served a little over a year of her 60-month sentence, weighed against her motion for relief. Doc. 83 at 10.

### B. Second Motion for Compassionate Release

In Dolloff's second motion for compassionate release, she argues that her recent diagnosis of bilateral optic neuritis, in addition to her stage 5 chronic kidney disease and other medical conditions, warrants relief. Doc. 84 at 2–3; Doc. 86 at 3. Further, she claims relief is warranted because she has served a larger portion of her sentence than when she first moved for relief, she is not eligible to receive a kidney transplant while incarcerated, and she remains susceptible to severe complications from COVID-19. Doc. 86 at 3–8.

In December 2020, shortly after this Court denied Dolloff's first motion, she tested positive for COVID-19. Doc. 85 at 75; Doc. 87 at 6. She fully recovered in January 2021 and was vaccinated against the virus. Doc. 87 at 6. In the past year, Dolloff has also continued to have complications with accessing her AV fistula. Doc. 86 at 3. She underwent angioplasties to open

3

her arteries in March 2021 and July 2021 and continues to have hand pain related to complications from her AV fistula. Doc. 85 at 2, 40; Doc. 86 at 3.

Dolloff has also intermittently suffered from losses in vision and visual acuity since 2012. Doc. 85 at 230, 233. She has been seen by multiple specialists over the years and, in December 2020, was eventually diagnosed with bilateral optic neuritis with an unknown origin. Doc. 85 at 230. Bilateral optic neuritis is a condition where a patient's optic nerves are demyelinated, causing visual impairment. Doc. 85 at 230; Doc. 86 at 3–4.

In April 2021, Dolloff reported deterioration in her vision to the extent of blindness in one eye and low vision in the other. Doc. 85 at 44. She was given glasses to address her symptoms. Doc. 85 at 44. That month, the Bureau of Prisons ("BOP") also approved Dolloff for an external consult to determine whether she was eligible for a kidney transplant. Doc. 85 at 47. Dolloff claims that she was determined to be ineligible due to her incarceration, although she has not provided any supporting documentation from the consultation. Doc. 84 at 3; Doc. 86 at 4–5.

At a follow up neurology appointment in July 2021, Dolloff's visual acuity improved significantly, and she was able to read. Doc. 85 at 231. The attending physician recommended a six-month follow up appointment and instructed Dolloff to "avoid being overheated in the Texas summer because bilateral optic neuritis is an autoimmune demyelination that can worsen under conditions of very high heat." Doc. 85 at 231. In August 2021, Dolloff's medical records noted that she continued to suffer from blindness in one eye and low vision in the other, although an MRI did not show evidence of demyelination.[2] Doc. 85 at 3.

II.    **Legal Standard**

---

[2] Dolloff also notes that the MRI revealed that she had an unusually small pituitary gland, although there is nothing in Dolloff's medical records to suggest that this abnormality is associated with any negative symptoms. Doc. 85 at 1; Doc. 86 at 4.

4

Generally, a "court may not modify a term of imprisonment once it has been imposed" except in a few narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. This statute provides in part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)    extraordinary and compelling reasons warrant such a reduction; ...
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). If the BOP does not respond to an inmate's request for compassionate release within 30 days, the inmate may make a motion for release to the court. United States v. Rodd, 966 F.3d 740, 744 (8th Cir. 2020). The BOP did not submit a request for compassionate release on Dolloff's behalf when she first moved for relief in 2020, so her claim is ripe for review. Doc. 83 at 4.

"The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, 893 (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). After considering whether the motion for release is consistent with 18 U.S.C. § 3553(a) sentencing factors, a court may grant the

5

motion if it is consistent with the relevant policy statements of the Sentencing Commission. 18

U.S.C. § 3582 (c)(1)(A); Loggins, 966 F.3d at 892.[3]

## III.   Discussion

### A.  18 U.S.C. § 3553(a) Sentencing Factors

Section 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available; . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

As this Court stated in its previous order denying compassionate release, a sentence of

60-months custody was appropriate in light of these factors, particularly when considering the

nature and circumstances of Dolloff's offense and the need to avoid sentencing disparities. Doc.

83 at 9. Although Dolloff has served more time now than when she submitted her first motion,

she has not yet served half of her 60-month sentence. Doc. 86 at 9.

### .B.  Extraordinary and Compelling Reason

---

[3] Because the Sentencing Commission has not updated its policy statement since the First Step Act was passed, some districts courts have question whether courts have the authority to grant motions for compassionate release under U.S.S.G. § 1B1.13. See, e.g., United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-CR-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). This Court assumes that the policy statement applies. See United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021) (assuming that the "policy statement in U.S.S.G. § 1B1.13 continues to apply to compassionate-release motions filed after the passage of the First Step Act" when the parties agreed that it did).

The policy statement of the Sentencing Commission, U.S.S.G. § 1B1.13, states that a court may grant a motion for compassionate release if it determines the defendant is not a danger to the public and "extraordinary and compelling reasons warrant the reduction." Extraordinary and compelling reasons may exist based on the following circumstances:

> (A) "Medical Condition of the Defendant.
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is--
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."
> (B) "Age of the Defendant.--" such when the defendant is at least 65 years old, suffering serious physical or mental deterioration due to the aging process, and has served a certain portion of his or her sentence.
> (C) "Family Circumstances.--" which may apply upon
> (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or
> (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."
> (D) "Other Reasons.--" such as when "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" exists.

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (cleaned up).

Since this Court denied Dolloff's first motion for compassionate release, she has continued to suffer some complications from her AV fistula and dialysis treatment. Doc. 86 at 3. But her condition has not materially changed. As discussed, Dolloff's stage 5 kidney disease is not an "extraordinary and compelling reason" under U.S.S.G. 1B1.13 comment note 1(A)(i) when this Court knew of her condition at sentencing. See Doc. 83 at 6–8.

7

Additionally, there is nothing in the record to suggest bilateral optic neuritis is a terminal illness, such as a "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), [or] end-stage organ disease," that may warrant relief under U.S.S.G. 1B1.13 comment note 1(A)(i). Dolloff also does not claim that bilateral optic neuritis is a "a serious physical or mental condition . . . that substantially diminishes the ability of [a] defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13 cmt. n.1(A)(ii). Dolloff's symptoms appear to be intermittent, and she has managed her symptoms for years and received care during her incarceration. Doc. 85 at 230–31, 233. While vision loss from bilateral optic neuritis may be a serious and difficult diagnoses to receive, perhaps especially when considering Dolloff's other health issues, it is not an "extraordinary and compelling reason" to grant relief under U.S.S.G. 1B1.13 comment note 1.

Dolloff's ineligibility to receive a kidney transplant while incarcerated is also not an "extraordinary and compelling reason" for relief under U.S.S.G. 1B1.13. Dolloff's release would not guarantee that she will become eligible for a kidney transplant in the future, or that such a transplant would be successful. Dolloff's condition is also being managed effectively through dialysis and other medical care during her incarceration, and there is no reason to believe Dolloff's prognosis has changed since sentencing or since this Court's previous order denying her request for compassionate release. See Doc. 83 at 6–8; Doc. 86 at 3; United States v. Goode, No. 14 CR 810-07 (CM), 2020 WL 58272, at *6 (S.D.N.Y. Jan. 6, 2020) (denying a defendant's motion for compassionate release when the defendant's "end stage kidney disease" was known at the time of sentencing and was being treated). Additionally, Dolloff's history of methamphetamine use on pretrial release, despite her serious medical issues, is still concerning. Doc. 83 at 10.

8

Finally, the development of effective COVID-19 vaccines and Dolloff's recovery from the virus weigh against her motion. Doc. 87 at 6. COVID-19 vaccines greatly minimize the risk of death or severe complications from COVID-19. COVID-19, CTR. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/how-they-work.html (last updated Aug. 16, 2021). The COVID-19 pandemic is not an "extraordinary and compelling reason" to grant release as Dolloff's risk of severe complications from COVID-19 has been greatly reduced through vaccination and her recovery from the virus. See Doc. 87 at 6; COVID-19, CTR. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Aug. 6, 2021) (stating reinfection with COVID-19 is rare); United States v. Rodriguez, No. 15-CR-0254 (PJS/BRT), 2021 WL 1187149, at *1 (D. Minn. Mar. 30, 2021) (finding there was not an "extraordinary and compelling reason" to grant a defendant's motion for compassionate release when the defendant, who suffered from obesity and hypertension, was vaccinated against COVID-19).

## IV. Conclusion and Order

Upon reviewing developments in Dolloff's medical history, there is not an "extraordinary and compelling reason" for compassionate release under the FSA. Therefore, it is

ORDERED that Dolloff's second motion for relief, Doc. 84, is denied.

DATED this 25ᵗʰ day of October, 2021.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

9